UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CURTIS TERRELL STUBBS,

                   Plaintiff,

-vs-

COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION,

                   Defendant.

DECISION AND ORDER

17-CV-6607-CJS

---

## APPEARANCES

For Plaintiff:                       Ida Comerford, Esq.
                                        Law Offices of Kenneth Hiller, PPLC
                                        6000 North Bailey Avenue, Suite 1A
                                        Amherst, NY 14226
                                        (877)236-7366

For the Commissioner:         Francis D. Tankard, Esq.
                                        Social Security Administration
                                        Office of General Counsel
                                        601 E. 12st Street, Room 965
                                        Kansas City, MO 64106
                                        816-936-5830

                                        Kathryn L. Smith, A.U.S.A.
                                        U.S. Attorney's Office
                                        100 State Street
                                        Rochester, NY 14614
                                        (585) 263-6760

## INTRODUCTION

**Siragusa, J.** Curtis Terrell Stubbs ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for Supplemental Security Income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. §§ 405(g), 1383(c). Both the Commissioner and Plaintiff have filed motions for judgment on the

pleadings. Pl.'s Mot., Apr. 6, 2018, ECF No. 9; Comm'r's Mot., Jun. 5, 2018, ECF No. 13. For the reasons stated below, Plaintiff's motion for judgment on the pleadings, ECF No. 9, is granted, and the Commissioner's cross-motion for judgment on the pleadings, ECF No. 13, is denied. The matter is remanded to the Commissioner for a new hearing.

## BACKGROUND

Plaintiff filed his application on March 17, 2014, for supplemental security income, alleging disability beginning March 17, 2014. The Commissioner denied his claim initially on May 1, 2014. At his request, Plaintiff appeared before an Administrative Law Judge ("ALJ") on March 8, 2016. The ALJ appeared by video conference from Alexandria, Virginia, and took testimony from Plaintiff, as well as from a vocational expert. Plaintiff was represented at the hearing by counsel.

The ALJ issued a decision dated April 29, 2016, finding that Plaintiff was capable of light work and was, therefore, not disabled. R. 17–31.[1] The Appeals Council denied Plaintiff's appeal on July 6, 2017, making the ALJ's decision the final decision of the Commissioner. Plaintiff filed suit on September 1, 2017, ECF No. 1, and the Court heard oral argument on October 18, 2018.

## STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). The section directs that when considering such a claim, the Court must accept the findings of fact made by the

---

[1] R. refers to the certified record of proceedings filed on February 5, 2018, ECF No. 8.

Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Metro. Stevedore Co. v. Rambo*, 521 U.S. 121, 149 (1997).

When determining whether substantial evidence supports the Commissioner's findings, the Court's task is "to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). Section 405(g) limits the scope of the Court's review to two inquiries: determining whether the Commissioner's findings were supported by substantial evidence in the record as a whole, and whether the Commissioner's conclusions are based upon an erroneous legal standard. *Green—Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003); *see also Mongeur*, 722 F.2d at 1038 (finding a reviewing court does not try a benefits case *de novo* ).

Under Rule 12(c), the Court may grant judgment on the pleadings where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir.1988).

## ANALYSIS

Plaintiff contends that the ALJ erred when he gave little weight to his treating physicians: Sarah Vengal, M.D., and Thomas Gregg, M.D. The Commissioner has a treating physician rule that reads as follows:

> Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to

provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's medical opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the medical opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.

20 C.F.R. § 416.927 (2017).

*Sarah Vengal, M.D.*

Dr. Vengal provided several opinions and two medical source statements about Plaintiff's physical abilities and concluded, in October 2015, that Plaintiff would be unable to work. The ALJ pointed out that Dr. Vengal's opinions were "not consistent with the objective and other evidence of record." R. 28. In that regard, the ALJ wrote that Dr. Vengal's conclusions were "contrary to the claimant's own admission of his current work activity," and that her opinions were "not consistent with her own correlating treatment records, which reflect that the claimant has grossly normal musculoskeletal, neurological and pulmonary findings." *Id*. Moreover, the ALJ also wrote that the doctor's opinion on Plaintiff's limitations was unsupported, since Plaintiff "has engaged in conservative and routine treatment for his back pain, diabetes, hypertension, osteoarthritis, and hypertension." R. 28, 367.

Plaintiff argues that the ALJ is substituting his own medical "expertise" for that of the doctor's, and that interpreting a note such as "Neuro: CN II-XII intact," R. 390, from one of Dr. Vengal's reports, requires more than a layman's understanding to decode. Pl.'s Mem. of Law 15. On this point, the Court notes that the Second Circuit has approved of an ALJ's comparison of a doctor's opinion to the doctor's notes to see if the doctor's notes support his or her

4

conclusions. *Monroe v. Comm'r*, 676 F. App'x 5, 7 (2d Cir. 2017) ("Not only did the ALJ find that Dr. Wolkoff's medical source statement contained internal inconsistencies, but she also determined that his treatment notes contradicted his RFC assessment."). Therefore, the Court will assess the ALJ's reasons for giving Dr. Vengal's opinion little weight.

### *Plaintiff's Current Work*

In seeking judgment, Plaintiff relies in part on *Gunter v. Comm'r of Soc. Sec.*, 361 Fed. App'x 197 (2d Cir. 2010), in which the Second Circuit wrote, "while contradictions in the medical record are for the ALJ to resolve . . . they cannot be resolved arbitrarily. . . . Here, the ALJ's incantatory repetition of the words 'substantial evidence' gives us no indication at all of why he chose to credit the opinions of the consulting physicians over that of Dr. Nidus." *Id*. at 200 (citations omitted).

In this case, the ALJ did not rely on an "incantatory repetition" of the words "substantial evidence" to explain why he was not giving more weight to Dr. Vengal's opinion. The ALJ pointed out that Dr. Vengal's opinion was at odds with Plaintiff's current work activity. R. 28. On this point, Plaintiff testified that he drove railroad employees to Syracuse from Rochester, approximately 70 miles, which takes about one hour on the New York State Thruway, and that he worked up to six hours per day and thirty hours weekly. R. 25, 62–63. Further, he testified he worked for a fence installation company for six months, carrying eighty-pound bags of concrete. R. 64.

However, Plaintiff also testified that he experienced back pain during driving stating, "I'm in the seat and I'm steady, twisting my body, fidgeting and sticking my hand behind my back, rubbing my back, as I'm driving." R. 77. He also testified that his somnolence affects him "three, four times a day or more. Sometimes less." R. 78. The ALJ asked Plaintiff the following question and he received the following response:

> Q. Has that ever happened to you while driving? Is it usually when you stop?
>
> A. Yes. I feel it coming on and I just pull over, you know, I try to do my best to make it to a rest stop or something and pull over, tell the crew I need to stop and, you know, power myself back up; go in the bathroom, keep rinsing my face and things of that nature, trying to wake myself back up.

R. 78–79. Moreover, Plaintiff testified that he has missed work "[f]rom being fatigued," and has had to turn down work. R. 81. Consequently, the Court finds that Plaintiff's testimony does not support the ALJ's conclusion that such testimony contradicts Dr. Vengal's findings.

### *Dr. Vengal's Treatment Records*

The ALJ also stated that Dr. Vengal's opinion was inconsistent with her own treatment records which he characterized as showing "grossly normal musculoskeletal, neurological and pulmonary findings." R. 28. Notations such as the one Plaintiff quoted about Dr. Vengal's neurological examination on May 15, 2015, may not useful to a layman. However, in that examination report are statements such as these: "Lungs: clear to auscultation bilaterally. No wheezes rales or rhonchi." R. 390. Regarding his hypertension, Dr. Vengal wrote: "[P]atient's initial BP was wnl, then orthostatics were all in hypertensive range. Given that I am uncertain of above symptoms will hold on adjusting medications, will check: - Basic metabolic panel; Future - at next visit will also be due for urine micro albumin." R. 391. About Plaintiff's diabetes, Dr. Vengal wrote: "- discussed continuing with lifestyle modification and continuing with metformin; recheck: - hemoglobin A1e; Future; - Basic metabolic panel; Future; - will also be due for urine microalbumin." Finally, as to Plaintiff's back-pain complaints, she wrote: "- DSS forms filled out today; - encouraged to go to PT." R. 391.

In contrast to this May 2015 examination report, Dr. Vengal provided a Physical Assessment for Determination of Employability to the Monroe County Department of Human

6

Services ("DHS"). R. 468.[2] In that assessment, Dr. Vengal concluded that Plaintiff was "VERY LIMITED" (one to two hours per eight-hour workday) in walking, standing, sitting, pushing, pulling, bending, *seeing*, *hearing*, *speaking*, and in his ability to lift or carry. R. 471 (emphasis added). She concluded that he could only work five hours per week due to dyspnoea, back pain, and somnolence. R. 469. Nothing in the May 15 treatment notes addressed Plaintiff's abilities with regard to walking, standing, sitting, pushing, pulling, bending, seeing, hearing, speaking, lifting, or carrying, all items she marked as "very limited" in the April assessment.

On October 2, 2015, Dr. Vengal completed another assessment for DHS. In that assessment, she again concluded that Plaintiff was very limited, as in May (except that she indicated he could now see, hear, and speak more than four hours). R. 476. This time, she wrote that Plaintiff could do *no* work, but listed no reason why. R. 473. In contrast, when she examined Plaintiff on October 14, 2015, she wrote that his diabetes was "without complication," that he was "walking a mile a day," and his lungs were clear. R. 484–85. Nothing in the October 14 treatment notes addressed Plaintiff's abilities with regard to walking, standing, sitting, pushing, pulling, bending, seeing, hearing, speaking, lifting, or carrying, all items she marked as "very limited" in the October 2 assessment. Therefore, the Court finds that the ALJ correctly assessed that Dr. Vengal's notes do not support her physical assessments.

### *Dr. Vengal's Conservative Treatment*

Plaintiff takes issue with the ALJ's rejection of Dr. Vengal's assessments based upon the fact that she did not provide the treatment one would expect of someone she felt was disabled. Dr. Vengal's notes show that she treated Plaintiff conservatively for his back pain,

---

[2] Although her signature line is undated, stamped on the report is "RECEIVED APR 20 2015."

diabetes, hypertension and osteoarthritis. The ALJ concluded that Plaintiff's diabetes and hypertension did not rise to the level of a severe impairment, which Plaintiff does not contest. R. 20–21, 28–29. The notes also showed that although Dr. Vengal recommended it, Plaintiff "has not started physical therapy." R. 371. Plaintiff argues that the ALJ was essentially "playing doctor" by using Dr. Vengal's treatment decisions as an indication that his stated disabilities were not severe enough to warrant finding him disabled. Plaintiff cites to several cases, all of which essentially criticize ALJs for failing to identify a medical expert who opined that the plaintiffs' medical treatment was atypical for a disabled person. *See, e.g., Wilson v. Colvin*, 213 F. Supp. 3d 478, 490–91 (W.D.N.Y. 2016).

In support of his finding that Plaintiff received only conservative and routine treatment for his back pain, diabetes, hypertension, and osteoarthritis, the ALJ cited page 79 of Exhibit 5F, which is page 367 in the Record. R. 28. In her examination notes for that day, December 17, 2014, Dr. Vengal recorded the following complaints from Plaintiff regarding his back pain:[3]

- flexeril, not of any benefit. Stopped taking them. Also tried mobic without any benefit

- having a hard time walking, doing any activity

- very limited with the back

- has been going on for a couple years

- has done physical therapy- hasn't [sic] helped any

- continues to do the exercises

- cant [sic] stand on feet for very long, sometimes less than 15 minutes

- back will tighten up on him

- wants to know if there is a strap that will help

---

[3] Plaintiff identified to the ALJ that his back was the part of his body that gave him the most pain. R. 74.

- would like to go walking but has severe pain with it, in back

R. 366–67. In the "A/P"[4] portion of the same December 2014 report, she wrote with respect to his back pain and other complaints, the following:

1. Back pain

- discussed that logn [sic] term benefits include continuing to work with PT and weight loss

- will write for back brace to use as needed as trying to get back into activity but discussed that it should not be worn 24/7

2. Sleep apnea

- continue with cpap as everything appears to be progressing appropriately

- no changes indicated at this time, will continue to monitor

3. Obesity

- discussed diet and exercise and starting a food log to bring in to discuss different food options that can be made

4. Unspecified essential hypertension

- appears well controlled at this time, suspect that may be related to CPAP use and improvement of sleep apnea. Discussed with patient that we do not want to continue to lower his blood pressure and he may need to be titrated off some of his medications, but will need to continue to follow closely to determine changes in medications needed. Discussed warning signs of hypotension and when to call in.

R. 367. The Court agrees that Dr. Vengal's conservative treatment of Plaintiff's ailments contradicts her conclusions of severe limitations on the physical assessment forms.

Therefore, based upon contradictions in Dr. Vengal's treatment notes specified above, the Court finds that the ALJ did provide good reasons for giving Dr. Vengal's opinion little weight.

---

[4] The Court presumes this is an abbreviation for "assessment" and "prognosis."

*Harbinder Toor, M.D.*

The medical evidence on which the ALJ did place great weight, the consultative examination by Harbinder Toor, M.D., provided information on the same complaints reviewed by Dr. Vengal. Dr. Toor saw Plaintiff on April 22, 2014, and gave him an internal medical examination. R. 261–64. His musculoskeletal examination results were as follows:

> Cervical spine shows full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. No scoliosis, kyphosis, or abnormality in thoracic spine. Lumbar spine forward flexion 30 degrees, extension 0 degrees, lateral flexion and lateral rotation bilaterally 30 degrees. SLR negative both sitting and supine bilaterally. Full ROM of shoulders, elbows, forearms, and wrists bilaterally. Full ROM of hips and knees bilaterally. Left ankle plantar flexion 10 degrees, dorsiflexion 10 degrees. Tenderness and slight swelling in the left ankle. Scar from injury and surgery in the left ankle. Full ROM of right ankle. No evident subluxations, contractures, ankylosis, or thickening. Joints stable. No redness, heat, or effusion.

R. 263. Dr. Toor's medical source statement was:

> He has moderate limitation standing, walking, squatting, sitting, bending, and lifting. Pain interferes with his physical routine and sometimes with the balance. He should avoid irritants or other factors which can precipitate asthma.

R. 264. On the Physical Assessment for Determination of Employability form used by Monroe County, R. 283, a moderate limitation means that the individual could perform standing, sitting, etc., for two to four hours in an eight-hour workday. R. 286. Since Dr. Toor did not define "moderately limited," the ALJ was without specific medical guidance to make a determination that Plaintiff retained the residual functional capacity for light work, which the Commissioner defines as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 416.967 (Lexis Advance through the October 15, 2018 issue of the Federal

Register. Title 3 is current through October 5, 2018).

The Court's electronic search of the Record revealed only one opinion from an examining physician about Plaintiff's ability to lift weights: Dr. Vengal's medical source statement dated March 2, 2016, in which she indicated Plaintiff could rarely lift or carry 20 pounds, and only occasionally lift or carry 10 pounds or less. R. 526. Since the ALJ gave Dr. Vengal's opinion little weight, his RFC determination was made without the benefit of a medical opinion.

### *Thomas Gregg, M.D.*

Dr. Gregg completed a medical source statement dated September 10, 2014. He wrote that for the next three months, Plaintiff could only work for up to 5 hours per week and could not stand for more than 20 minutes. R. 284. Dr. Gregg prepared another medical source statement dated June 10, 2014. R. 273. He stated that Plaintiff could use public transportation, and for the next six months, could work up to 15 hours per week. R. 274. He reported that Plaintiff could walk and stand only 1 to 2 hours per week, sit for only 2 to 4 hours per week, and lift or carry only 1 to 2 hours per week. R. 276.

### *RFC Determination Unsupported by Substantial Evidence*

Cases in this District hold that an ALJ's RFC determination generally requires supporting medical evidence in the Record. Stemming from a 2010 Eastern District case, *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330 (E.D.N.Y. 2010), a long line of cases in this District follow the logic in the *Hilsdorf* case, where the district court reasoned:

> An ALJ's obligation to obtain necessary medical records includes an obligation to obtain a proper assessment of the claimant's RFC. *See* 20 C.F.R. § 404.1513(b)[5] (describing "medical reports" as including "statements about what [a claimant] can still do").

---

[5] In the current version of the regulation, this language appears at 20 C.F.R. § 404.1513(a)(2) (Mar. 27, 2017) and § 404.1527(a)(1) (Mar. 27, 2017).

> Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error. *See Woodford v. Apfel,* 93 F.Supp.2d 521, 529 (S.D.N.Y. 2000) ("An ALJ commits legal error when he makes a residual functional capacity determination based on medical reports that do not specifically explain the scope of claimant's work-related capabilities."); *Zorilla v. Chater,* 915 F. Supp. 662, 666–67 (S.D.N.Y. 1996) ("The lay evaluation of an ALJ is not sufficient evidence of the claimant's work capacity; an explanation of the claimant;s functional capacity from a doctor is required.").

*Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010). Citing this case, the Honorable Frank P. Geraci Jr., Chief Judge of this Court, in *Cutre v. Berryhill*, No. 17-CV-135-FPG, 2018 WL 3968385, at *3 (W.D.N.Y. Aug. 20, 2018), wrote:

> Additionally, an ALJ cannot "assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Wilson v. Colvin*, No. 13-CV-6286P, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (citation omitted). Even though the Commissioner is empowered to make the RFC determination, "where the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities," the general rule is that the Commissioner "may not make the connection" herself. *Id.* (citation and alterations omitted); *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010) ("Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error.") (citations omitted).

*See also Caswell v. Berryhill*, No. 17-CV-6133-FPG, 2018 WL 4404578, at *5 (W.D.N.Y. Sept. 17, 2018) (same). The Honorable Michael A. Telesca in *Ubiles v. Astrue*, No. 11-CV-6340T MAT, 2012 WL 2572772, at *12 (W.D.N.Y. July 2, 2012), held the same, again following the reasoning in *Hillsdorf*. The undersigned has also adhered to this reasoning in *Rodgers v. Colvin*, No. 16-CV-6739-CJS, 2018 WL 446220, at *2–3 (W.D.N.Y. Jan. 17, 2018) (ALJ's RFC determination cannot stand in the absence of medical opinion in support of functional capabilities). Although on occasion the Court has deviated from this reasoning, *see, e.g., Altman v. Berryhill*, No. 15-CV-00967-MAT-JJM, 2017 WL 5634731, at *5 (W.D.N.Y. Nov. 7,

2017), *report and recommendation adopted,* No. 1:15-CV-00967 (MAT), 2017 WL 5629964 (W.D.N.Y. Nov. 22, 2017) (involving relatively minor physical impairments), the cases have consistently held that an ALJ must have medical support for her RFC determination. What would have prevented the ALJ here from determining that Plaintiff could sustain medium or heavy work?

The Record contains no medical evidence to support the ALJ's conclusion that Plaintiff is capable of light work. Accordingly, the ALJ's RFC determination is unsupported by substantial evidence and the ALJ's decision is reversed and remanded for a new hearing pursuant to the fourth sentence in 42 U.S.C. § 405(g).

## CONCLUSION

Plaintiff's motion for judgment on the pleadings, [ECF No. 9](ECF No. 9), is granted, and the Commissioner's cross-motion for judgment on the pleadings, [ECF No. 13](ECF No. 13), is denied. The ALJ's decision is reversed, and the matter is remanded to the Commissioner for a new hearing pursuant to the fourth sentence of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

DATED: November 30, 2018
Rochester, New York

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge